### DUKE v. MISSOURI PAC. R. CO.

### No. 4290.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellant.

Cas Moss, of Winnfield, for appellee.

McGREGOR, J.

Plaintiff brings this suit to recover damages in the sum of $150 for the killing of one of his mules by one of defendant's freight trains on or about October 1, 1930. In his petition he alleges that the mule in question was run down, struck, run over, and killed through the fault and negligence of the defendant and its agents and employees, in that the freight train which killed it was being operated in a careless and reckless manner without regard to the care and safety of the said animal. It is specially alleged that this defendant had inclosed its right of way and track with a fence at the place where the mule was killed, but that the fence was in such a bad state of repair that all kinds of stock went upon the track at will.

In its answer the defendant alleges that it has fenced its right of way; that this protection of its track is in good condition; and that the killing of the mule, which it admits, was in no manner due to any fault or negligence on its part or of its employees.

The lower court rendered judgment in favor of the plaintiff for $150, the value of the mule killed, and the defendant has appealed.

### Opinion.

The demand of the plaintiff in this case is based upon Act No. 70 of 1886. Under the provisions of this act the plaintiff is required to prove only the fact of the killing of the mule by the defendant's train in order to make out its case, while the burden is on the defendant to show that the killing was not the result of fault or negligence on its part or of the negligence or indifferent running or management of its train. Act No. 110 of 1886 provides for the fencing of railroad rights of way, and specifically provides that in cases where the defendant railroad has its line of track fenced in and kept in good order and has erected and maintained in good order suitable cattle guards at crossings, the burden of proof with reference to the negligence of the railroad shifts to the plaintiff.

■ One of the issues raised in this case is as to whether the defendant has kept and maintained its fences and cattle guards in good order. The evidence on this point is conflicting. In a careful and well-considered written opinion the trial judge found and held that they were not in a condition sufficient to exclude cattle and horses from the tracks. We have studied and carefully considered the evidence on this point and find no error in the conclusion reached by the lower court, and, following our usual custom, we

adopt it as our own. This failure to maintain its fences and cattle guards in good condition is not negligence on the part of the defendant, but it shifts upon it the burden of showing that it and its employees were guilty of no fault or negligence in connection with the accidental killing of plaintiff's mule.

The accident involved herein occurred just south of Riverton in Caldwell parish. Defendant's depot is on the east side of this track at that point. A few feet south of the depot the state highway crosses the railroad from west to east, at right angles. A few feet further south there is a cattle guard, and from that point south to where the railroad crosses the Ouachita river the right of way is fenced. The track at this point is straight and, standing at the depot, the vision is unobstructed for a distance of approximately one-half mile each way.

Adjacent to the defendant's right of way on the west there is a considerable pasture in which several of the neighbors of the immediate vicinity graze their cattle and work animals. Among those who kept their horses and mules in this pasture was the plaintiff. On occasions mules and horses broke out of this pasture into the strip of land that is inclosed by the defendant's fence and which extends from the cattle guard at Riverton down to the Ouachita river. They entered the right of way over imperfect cattle guards, defective gates, or breaks in the fence. Just outside of this fenced strip at the northeast corner there is a gin which, on the night of the accident, was being guarded by a night watchman named Whitstine. This man was an eyewitness to the occurrence, and it is upon his testimony that the plaintiff depends to rebut the testimony of the defendant's witnesses.

Whitstine testifies that just a few seconds before the accident, while he was in the gin yard at about 11 o'clock at night, in the performance of his duties, his attention was attracted to a drove of mules milling around on the railroad track at the cattle guard on the south side in an apparent effort to get out of the enclosure. He states that he saw them plainly by means of the reflection of the headlight of defendant's locomotive pulling the freight train, which at that moment was about one-fourth mile away, coming south at a speed of about forty miles per hour. He states further that he rushed out of the gin yard toward the cattle guard in an effort to drive the mules off the track, but that by the time he reached the edge of the right of way the train had reached the point where the mules were. One of them was hurled from the track clear through the fence on the east side at a point about one hundred feet or more below the cattle guard. A horse was struck and killed a few yards further south on the west side of the track, and at a point nearly a quarter of a mile south of the cattle guard

plaintiff's mule was struck and killed and dragged something like a hundred yards.

Testifying for the defendant, J. H. Walker, who was the engineer on the freight train on the night of the accident, stated that the cattle guard is about four hundred feet south of the depot; that he never saw the mules until he had reached the depot; and that at that instant they came upon the railroad track from the west on the public highway north of and outside of the cattle guard and the land inclosed by the right of way fence. It is his testimony that some of the mules got across in safety, and others that did not turned south down the railroad and jumped clear over the cattle guard into the inclosed right of way and were eventually struck and killed by the train while it was coming to a stop; the emergency air brakes having been applied at the depot. Walker is corroborated in his version of the accident by G. H. Mills, who was fireman on the locomotive. Both of these witnesses testify positively that the mules were north of the cattle guard, and that they first came into view from the west just as the locomotive was passing the depot, and that the emergency air brakes were immediately applied. If their version is correct, then there was no negligence on their part and the plaintiff should not recover.

On the other hand, Whitstine, the night watchman who was an absolutely disinterested witness, testified that the mules were south of the cattle guard and, therefore, did not and could not have come upon the track from the west along the public highway in an effort to cross the railroad ahead of the train. He states positively and definitely that he saw the mules on the track south of the cattle guard, inside the inclosed part of the right of way, and that they were disclosed to him by the reflection of the headlight of the locomotive, which was up the track at least one-fourth mile away. The engineer says that if the mules were there he could have seen them with the light that he had. Whitstine could not have been mistaken. He was right at the spot and saw clearly. In order to disbelieve his testimony we would be compelled to convict him of outright lying. We find no justification for this. On the other hand, the engineer and fireman could be mistaken. As they approached the depot from the north they were intent upon watching for the signal lights at the depot and for the moment did not watch the center of the track for stock. Then, as they had safely passed the signal lights, they suddenly saw that they were about to run over the mules. They evidently appeared to them to have arisen from the ground in front of them, and no doubt they honestly thought they must have come from the west along the highway. But their version is highly improbable. It would seem next to impossible

for all of those mules to have jumped over the cattle guard as the defendant's witnesses thought they did. The mules must have been just south of the cattle guard on the track when the engineer and fireman realized their presence. Then, if they were there and had been there for a few seconds *according to* the testimony of the engineer himself, he should have seen them. They were there and his headlight was shining upon them and he ought to have seen them. Since he did not see them, it was negligence on his part and the plaintiff should recover. This is the view that the trial judge took of the matter. He saw and heard all the witnesses testify, and we cannot say that there is error in his finding. While the testimony is close and conflicting, it must be borne in mind that, because of the holding that the fence and cattle guard were in bad condition, the burden was on the defendant to prove itself free of all fault and negligence. Certainly, we cannot say that the defendant has shown by a preponderance of the testimony that its employees were guilty of no negligence.

For the reasons assigned, the judgment appealed from is affirmed, with all costs.